MOBAY CHEMICAL CORP.

v.

UNITED STATES.

C.D. 4685;  Court Nos. 70/36742, etc.

United States Customs Court.

Jan. 25, 1977.

Sharretts, Paley, Carter & Blauvelt, New York City (Patrick D. Gill, New York City, of counsel), for plaintiff.

Rex E. Lee, Asst. Atty. Gen., Washington, D. C. (Herbert P. Larsen, trial atty., New York City), for defendant.

## OPINION AND ORDER

WATSON, Judge:

Defendant has striven mightily to show the existence of issues of material fact which would make these cases inappropriate for the summary disposition plaintiff seeks. Plaintiff relies on the decision in *Verona Dyestuffs Div. of Verona-Pharma Chemical Corp. v. United States,* 69 Cust.Ct. 26, C.D. 4369 (1972), in which this court held urethane pastes such as these to be classifiable as "plastics materials"[1] rather than "mixtures"[2] because they possessed sufficient polymer content to form plastic articles by themselves. The articles in dispute here differ only with respect to the colors of their pigments but are otherwise the same mixtures of approximately 16% pigment, 75% polyester resin and 9% plasticizer as were the subject of the *Verona* decision.

Defendant now asserts the correctness of classifying these pastes as color toners[3] rather than plastics materials. Consistent with its new position and in an attempt to demonstrate the existence of issues of material fact, defendant has amassed a series of affidavits attesting to the fact that urethane pastes are invariably used to impart

1. Item 405.25 of the Tariff Schedules of the United States.

2. Item 409.00 of the TSUS.

3. Item 406.70 of the TSUS.

color to plastic articles and the purpose of their polymer content is to render the pigment they contain "compatible" with the plastics materials or "facilitate its introduction" into the plastics materials.

All this concentration on the coloring function of the importations and on the polymer content as the vehicle for transmitting the color does not raise issues which are material to the outcome of the case. The points which defendant now stresses are consistent with the fundamental reasoning of the *Verona* case and leave the material and determining facts of the case undisturbed. The conclusion reached in the *Verona* case was not based on the actual use of the pastes and its reading of the scope of plastics materials is not altered when considered against the newly argued provision for "colors."

The essential material fact which determined the *Verona* decision was the undenied capability of the imported pastes to form plastic articles by themselves. In that respect they fell within the plain meaning of plastics materials without regard to whether their pigment content was high or low and without regard to whether it was the color or the polymer content which was of the primary importance in their actual use.

Defendant does not place in issue the fact these pastes can form plastic articles by themselves. It follows then that even if they are in practice exclusively used to supply color they are in substance more than mere colors. The distinction between articles which can be classified as colors and those which are plastic materials, despite their putatively high concentration of pigment, is simply the ability of the latter to form plastic articles by themselves. It was this distinction the court sought to draw when it disclaimed any intent to include in the term plastics materials "a product whose primary purpose and basic nature is that of a coloring agent without a signifi-

cant or meaningful admixture of plastic raw materials." By this language the court did not intend to foster a distinction based on actual use but rather to indicate that its holding did not emasculate the "color" provision because that provision would continue to govern colors in "pure" form and in other forms which lacked sufficient polymer content to make plastic articles by themselves.

It may be that by going so far into discussion of the use of the imported pastes as to discern a dual function when used (the introduction of color as well as polymeric content) and by engaging in rather loose theoretical discussion of the "fundamental" or "basic" nature of the products, the *Verona* decision left room for the impression that actual use was a determining factor or perhaps that a finding as to the quintessential or absolute character of the importation had been made. If such an impression was created it was probably a result of excessive and unnecessary elaboration of the basic theme of the decision. The essence of the decision and the area on which attention should have been exclusively focused was the capability for use of these pastes. So long as they were capable of forming plastic articles by themselves classification as plastics materials was correct. This capability remains undisputed and in the present context makes the provision for colors inappropriately narrow. The provision for plastics materials (with its inclusive headnote [4] which permits the presence of colors in plastics materials) remains the proper classification for these pastes.

In its statement of material facts defendant reiterates the contentions raised in its cross-motion of December 1, 1975 that jurisdiction is lacking in three of the cases consolidated herein, Court Nos. 72–6–01283, 73–3–00745 and 73–7–01790. The cross-motion referred to was made in partial opposition to plaintiff's motion to substitute *Mobay Chemical Corporation* in the cases con-

---

**4.** Headnote 3 to subpart C of schedule 4 of the TSUS reads in relevant part as follows:

  3. The term *"plastics materials"* in item 405.25 embraces products formed by the con-

densation, polymerization, or copolymerization of organic chemicals and to which plasticizers, fillers, colors, or extenders may have been added. . . .

tained in this consolidated action which were earlier captioned with various forms of the names of the *Verona Corp. Mobay* was the successor in interest to the *Verona* assets and choses in action by virtue of *Verona's* merger with other corporations and the formation of a new corporation which was ultimately named *Mobay*. Plaintiff's motion to substitute *Mobay* was granted without distinguishing the three cases in which severance and dismissal was sought by defendant.

Upon further reflection it now appears that defendant's objection was well-taken. The three actions were started in court at a time subsequent to the cessation of *Verona's* corporate existence. The successor corporation now named *Mobay,* not being the party whose protest was denied and having no relation to the underlying customs transaction, could not commence those actions in this court. See, 28 U.S.C. § 1582(a), (c). See also, 19 U.S.C. § 1514(b). The circumstances seem therefore to be analogous to those in *Parksmith Corp. et al. v. United States,* 77 Cust.Ct. ——, C.D. 4678, 428 F.Supp. 1094 (1976). Since these three actions were not brought to court by the party allowed to do so under the law, the court lacks jurisdiction of them and they must be dismissed.

It is therefore,

ORDERED, that Court Nos. 72–6–01283, 73–3–00745 and 73–7–01790 be dismissed, and it is further

ORDERED, that the urethane pastes embraced by the above-captioned consolidated action are properly classifiable as plastics materials under item 405.25, TSUS, as modified by T.D. 68–9, at the rates of 2.8 cents per pound plus 18 percent ad valorem (pre-1968); 2.5 cents per pound plus 16 percent ad valorem (1968); 2.2 cents per pound plus 14 percent ad valorem (1969); 1.9 cents per pound plus 12.5 percent ad valorem (1970); 1.6 cents per pound plus 10.5 percent ad valorem (1971); 1.4 cents per pound plus 9 percent ad valorem (post-1971), depending upon the date of entry; and it is further

ORDERED, that the entries shall be reliquidated accordingly.